COLE, Justice.
This is a direct appeal from trial court judgments, declaring the prior-claim requirement of LSA-R.S. 23:1601(2) unconstitutional on equal protection grounds. The two cases have been consolidated for review.
At issue in both cases is the constitutionality of the portion of LSA-R.S. 23:1601(2) necessitating the filing of a claim for unemployment benefits at a time when the applicant is ineligible in order that he may subsequently receive benefits after fulfilling other statutory requirements for eligibility. Plaintiffs argue the requirement is viola-tive of the equal protection and due process clauses of the Louisiana and U.S. Constitutions in that it mandates a useless, futile action by a claimant, and serves no legitimate purpose. LSA Const. Art. I, § 3; U.S.C.A. Const. Amend. 14. Because we find the prior-claim requirement violative of the equal protection provisions of both the Louisiana and U.S. Constitutions,[1] we *444 affirm, without ruling on the merits of plaintiffs’ due process claims.
FACTS
Charles Pierre was fired from his job as a route salesman for Eat More Snacks, Inc. due to misconduct. Pierre did not apply for unemployment benefits at this time. He subsequently worked at another job for four or five months, and thereafter, at Ara-tex Services, Inc. for over six months. He was discharged from Aratex under non-disqualifying circumstances, and subsequently filed a claim for unemployment benefits. His claim was denied.
Lisa Richards was discharged from Jefferson Health Care A.R.A. on July 21, 1987, under disqualifying circumstances. She did not file a claim for unemployment benefits at this time. She then worked for Maison Orleans and subsequently was discharged under non-disqualifying circumstances. She filed a claim for unemployment benefits, and her claim was denied.
If Pierre and Richards had each filed a claim immediately following discharge from their initial employers, their later claims, filed after being discharged from a subsequent employer under non-disqualifying circumstances would not have been denied. Neither of them would have been eligible to receive benefits immediately following the initial discharge, because both had been discharged for reasons that disqualified them as claimants. Nonetheless, LSA-R.S. 23:1601(2) requires a claimant to file a claim for benefits at a time when he is ineligible so he may qualify to receive benefits the next time he files a claim. In essence, claimants must file one claim that will be denied before a claim will be granted.
LAW
LSA-R.S. 23:1601 of the Louisiana Employment Security Law sets forth the grounds upon which an individual will be disqualified for benefits. This section also provides the means by which a claimant can overcome the disqualification, and thereby requalify for benefits. LSA-R.S. 23:1601(2), the subsection of the statute at issue, states:
An individual shall be disqualified for benefits:
(2)(a) If the administrator finds that he has been discharged by a base period or subsequent employer for misconduct connected with his employment. Such disqualification shall continue until such time as the claimant:
(i) Can demonstrate that he has been paid wages for work subject to the Louisiana Employment Security Law or to the unemployment insurance laws of any other state or of the United States equivalent to at least ten times his weekly benefit amount subsequent to a claim for a compensable week for unemployment benefits under this Paragraph and (ii) Has not left his last work under disqualifying circumstances.
(emphasis added.)
After being discharged the first time, plaintiffs were disqualified from eligibility for unemployment compensation because both were discharged for misconduct. Each subsequently earned wages of ten times his weekly benefit amount, but because these wages were not earned “subsequent to a claim for a compensable week for unemployment benefits,” their claims were denied.
LEGISLATIVE HISTORY
The prior claim requirement was added to LSA-R.S. 23:1601 by Act 131 of 1981. Act 131 additionally provided, under LSA-R.S. 23:1601(1), that benefits paid after re-qualification not be charged against an employer but rather be recouped as a social charge to all employers under the computation provisions of LSA-R.S. 23:1553(D), which was also amended. Prior to the 1981 amendment, an individual could requalify for unemployment benefits under LSA-R.S. 23:1601(2) if he earned the requisite *445 amount of wages “following the week in which the disqualifying act occurred.” LSA-R.S. 23:1601(2), as amended by Acts 1978, Nos. 285, 517 and 538.[2]
The legislative history of the Bill indicates its purpose was to reduce the unemployment tax burden on Employer A, the first in a series of employers, also known as the base period employer. The minutes of the June, 19, 1981 meeting of the House Committee on Labor and Industrial Relations reveal the following:

Senate Bill No. 302 by Senator Nelson

Representative O’Neal presented this measure for Senator Nelson and offered co-author and technical amendments. There was no objection to the amendments.
Representative O’Neal stated that this bill deals with the “Employer A” status under unemployment compensation. He explained that when an employee works for a period of time sufficient enough to qualify for unemployment benefits, then leaves this job, is employed elsewhere and later his employment is terminated, the burden of the unemployment goes back to the first employer. Representative O’Neal stated that this bill solves the problem by creating a special fund called a social charge account and the burden is spread among everyone.
The minutes of the meeting of the Senate Labor and Industrial Relations Committee at which the same bill was discussed indicate, likewise, that fairness to Employer A was the purpose of the amendment. This purpose, however, was effectuated by LSA-R.S. 23:1553(D), which was amended pursuant to the same Act. LSA-R.S. 23:1553 provides for a social charge account, funded by a surcharge on all of the state’s private employers. The amendment to LSA-R.S. 23:1553 changed one of the factors in the equation used to calculate the social charge rate, thereby reducing the tax burden on Employer A.
JURISDICTION
Defendants challenged this court’s jurisdiction over the constitutional issues in these consolidated cases. The Attorney General contests jurisdiction in both cases, and the Office of Employment Security contests jurisdiction only in the Pierre case.
The administrative records and findings reflect the only issue in the Richards case was whether the wages earned subsequent to her disqualification should requalify her for benefits, notwithstanding her failure to meet the prior-claim requirement. Richards did not contend she was not guilty of misconduct. The constitutional issue in her case is properly before this court.
In his initial petition for judicial review, Pierre raised the constitutional issue and contested the Board of Review’s finding of misconduct. The district court remanded his case to the Board of Review for the taking of additional evidence, pursuant to LSA-R.S. 23:1634(B). In his remand order, the district judge provided for submission of additional evidence on the following issues:
1) whether the claimant was terminated from the named employer due to intentional misconduct;
2) whether the severity of the disqualification assessed against the claimant is appropriate, considering the gravity of the claimant’s offense;
3) whether the disqualification should have been purged by any wages that the claimant earned subsequent to his discharge from the named employer.
The Board of Review affirmed its prior decision finding Pierre guilty of miscon *446 duct, and denying benefits to Pierre because he failed to fulfill the prior-claim requirement. The district judge did not rule on the soundness of the Board’s finding of misconduct. Defendants contend we are without jurisdiction to adjudicate the constitutional issue until there has been a judicial ruling on the misconduct question. Then, we may rule on the constitutional issue only if the finding of misconduct is affirmed.
There is ample evidence in the record to support the finding of misconduct. Charles Pierre was not represented by counsel when he filed his original petition for judicial review. He has not challenged the finding of misconduct in his appeal to this court, wherein he was represented by counsel. In fact, his counsel, in oral argument before this court, conceded Mr. Pierre was guilty of misconduct. The failure of the district judge to rule on the misconduct issue does not divest this court of jurisdiction over the constitutional issue. It simply means we could decline to rule on the constitutional issue and order a remand for judicial determination of the misconduct question. In this case, however, a remand would serve no useful purpose and would frustrate the objectives of judicial economy.
ANALYSIS
Defendants cite Gunter v. Louisiana Dept. of Labor, 442 So.2d 804 (La.App. 4th Cir.1983), writ den., 445 So.2d 438 (La.1984), in support of their argument that the decision to add the prior-claim requirement was solely within the discretion of the legislature.[3] Gunter held any absurdity re-suiting from the prior-claim requirement should be addressed by the legislature rather than by the courts. In Gunter, the unemployment compensation claimant had left his former employment for a higher paying job. He was not discharged. He was disqualified from receiving benefits under LSA-R.S. 23:1601(1) rather than 23:1601(2). Like plaintiffs in our case, Gunter failed to meet the prior-claim requirement, which was added to 23:1601(1) as well as 23:1601(2) by the 1981 amendment.[4] Although the requirements for re-qualification are the same under both 23:1601(1) and (2), the former is different in that it provides:
... [I]f the claim for a compensable week is filed subsequent to six months from the date of any disqualifying separation under this Paragraph and the claimant has earned ten times his weekly benefit amount subsequent to the separation and has not left his last work under disqualifying circumstances, the disqualification imposed by this Paragraph shall no longer apply.
(c) Benefits paid after this requalification shall not be charged against the experience rating account of an employer who has filed a timely protest in response to the Notice to Base Period Employers which, but for the provisions of this Paragraph, would have resulted in a disqualification of the claimant. Amounts noncharged pursuant to this provision shall be recouped as a social charge to all employers in .accordance with R.S. 23:1553(D).
We make no finding on whether the six month period is sufficient to protect the *447 prior-claim requirement of 23:1601(1) from constitutional attack because the issue is not presently before us. Gunter filed a claim for benefits before six months had elapsed from the time he left his former employer under disqualifying circumstances. His claim was denied because he had not fulfilled the prior-claim requirement, although he had earned ten times his weekly benefit amount. Gunter did not allege the prior-claim requirement was unconstitutional, thus the present constitutional issue was not addressed by the court.
LSA-R.S. 23:1601(2) differentiates among those claimants who have earned enough wages to “requalify” for benefits after being disqualified upon discharge. Only those who have fulfilled the prior-claim requirement are eligible to receive unemployment compensation benefits. The prior-claim requirement therefore creates a classification scheme under which persons similarly situated receive unequal treatment. In Sibley v. Board of Supervisors of Louisiana State Univ., 477 So.2d 1094, 1107 (La.1985) (on rehearing), this court articulated three types of legislative classifications of individuals, and the standard of review and the burden of proof applicable to each under Article I, § 3 of the Louisiana Constitution of 1974. Since the classification at issue does not differentiate on the basis of race or religious beliefs, nor on the basis of birth, age, sex, culture, physical condition, or political ideas or affiliations, Sibley provides:
[I]t shall be rejected whenever a member of a disadvantaged class shows that it does not suitably further any appropriate state interest, (footnote omitted).
477 So.2d at 1107-08.
See also, Everett v. Goldman, 359 So.2d 1256 (La.1978). Under the U.S. Constitution, the legislative classification must be rationally related to a legitimate state purpose, a standard of review that is essentially the same as Louisiana’s where no fundamental right or suspect classification is involved. Clements v. Fashing, 457 U.S. 957, 102 S.Ct. 2836, 73 L.Ed.2d 508, reh. den., 458 U.S. 1133, 103 S.Ct. 20, 73 L.Ed.2d 1404 (1982); United States Dept. of Agriculture v. Moreno, 413 U.S. 528, 93 S.Ct. 2821, 37 L.Ed.2d 782 (1973).
Under the test enunciated in Sibley, we find plaintiffs have carried their burden of proving that among claimants who are otherwise qualified to receive benefits, the statute’s differentiation between those who have filed a prior claim and those who have not does not suitably further any appropriate state interest. We likewise find the statutory classification unconstitutional under the United States Constitution because it is not rationally related to a legitimate state purpose. City of Cleburne, Texas v. Cleburne Living Center, 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985); Zobel v. Williams, 457 U.S. 55, 102 S.Ct. 2309, 72 L.Ed.2d 672 (1982).
Alleviating the surcharge or tax burden on Employer A through the social charge account is the only discernable purpose behind the amendment which also created the prior-claim requirement. Defendants have alleged no other state interest which is or might be furthered by the prior-claim requirement. Since the prior-claim requirement does not further the asserted state interest in fairness to Employer A, nor do we find it suitably furthers any appropriate state interest, we find it unconstitutional under the equal protection provisions of both the Louisiana and U.S. Constitutions.
The phrase “subsequent to a claim for a compensable week for unemployment benefits under this Paragraph” in LSA-R.S. 23:1601(2)(a)(i) is the 1981 amending language which created the prior-claim requirement. We find this amending language unconstitutional. As this court noted in City of New Orleans v. Levy, 223 La. 14, 64 So.2d 798 (1953), an “unconstitutional amending statute or ordinance is in reality no law, and in legal contemplation is as inoperative as if it had never been passed.” See also State in the Interest of Hunter, 387 So.2d 1086 (La.1980). Therefore, we conclude LSA R.S. 23:1602(2)(a)(i) must be *448 applied in its pre-1981 form.[5]
DECREE
For the reasons assigned, we affirm the judgments of the trial court declaring the prior claim requirement of LSA-R.S. 23:1601(2) unenforceable as an unconstitutional violation of equal protection guarantees. The part of the judgments directing the Office of Employment Security to pay claimants all benefits to which they are entitled is also affirmed. All costs of this proceeding are to be assessed against applicants.
AFFIRMED.

. U.S.C.A. Const. Amend. 14, § 1 provides:
All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.
LSA Const. Art. I, § 3 provides:
No person shall be denied the equal protection of the laws. No law shall discriminate against a person because of race or religious ideas, beliefs, or affiliations. No law shall arbitrarily, capriciously, or unreasonably dis *444 criminate against a person because of birth, age, sex, culture, physical condition, or political ideas or affiliations. Slavery and involuntary servitude are prohibited, except in the latter case as punishment for crime.

. Prior to the 1981 amendment, LSA-R.S. 23:1601(2) provided in pertinent part:
An individual shall be disqualified for benefits:
(2) If the administrator finds that he has been discharged for misconduct connected with his employment such disqualification shall continue until such time as the claimant (a) can demonstrate that he has been paid wages for work subject to the Louisiana Employment Security Law or to the unemployment insurance laws of any other state or of the United States, equivalent to at least ten times his weekly benefit amount following the week in which the disqualifying act occurred and (b) has not left his last work under disqualifying circumstances.

. Defendants also cite Jenkins v. Whitfield, 505 So.2d 83 (La.App. 4th Cir.1987) and McCullers v. State, Dept. of Labor, 405 So.2d 631 (La.App. 3d Cir.1981) as controlling authority in this case. Like Gunter, Jenkins involved LSA-R.S. 23:1601(1) rather than 23:1601(2). McCullers involved a regulation adopted by the Administrator of the Office of Employment Security. There was no constitutional challenge involved, and the case is not on point.

. Prior to the 1981 amendment, LSA-R.S. 23:1601(1) provided in pertinent part:
An individual shall be disqualified for benefits:
(1) If the administrator finds that he has left his employment without good cause connected with his employment. Such disqualification shall continue until such time as the claimant (a) can demonstrate that he has been paid wages for work subject to the Louisiana Employment Security Law or to the unemployment insurance law of any other state or the United States, equivalent to at least ten times his weekly benefit amount following the week in which the disqualifying act occurred and (b) has not left his last work under disqualifying circumstances.

. See supra, note 2, 23:1601(2)(a) as amended by Act 285 of 1979, for the pre-1981 language to be applied.