STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2020 CA 1126

DAVID TARVER

VERSUS

LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS

Judgment Rendered:   **MAY 1 2 2021**

* * * * *

On Appeal from the
Nineteenth Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
Trial Court No. 692,414

The Honorable Donald R. Johnson, Judge Presiding

* * * * *

David Tarver
Kinder, Louisiana

In Proper Person

Aisha K. Mirza
Baton Rouge, Louisiana

Attorney for Defendant/Appellee,
Louisiana Department of Public Safety
and Corrections

* * * * *

BEFORE: McDONALD, HOLDRIDGE, AND PENZATO, JJ.

**PENZATO, J.**

David Tarver, an inmate in the custody of the Louisiana Department of Public Safety and Corrections (DPSC), appeals the district court's judgment that affirmed DPSC's final decision in an administrative remedy procedure decision and dismissed his petition for judicial review with prejudice. For the reasons that follow, we affirm the district court's judgment.

## FACTS AND PROCEDURAL HISTORY

Tarver is housed at Allen Correctional Center (ALC) in Kinder, Louisiana, serving a twenty-five year sentence following a conviction for indecent behavior with juveniles, a violation of La. R.S. 14:81.[1] Tarver originally filed a complaint dated September 14, 2019, assigned administrative remedy procedure (ARP) No. ALC-2019-319 in accordance with the Louisiana Corrections Administrative Remedy Procedure ("CARP"), La. R.S. 15:1171 *et seq.*, alleging that he was eligible for parole under La. R.S. 15:574.2(C)(4)(b)(i) and (ii), which was enacted by 2017 La. Acts, No. 280, § 3, effective November 1, 2017 (Act 280).[2] On October 14, 2019, ALC denied his relief at the first step of the administrative remedy procedure, stating that the Master Prison Record parole eligibility date of August 28, 2020, was calculated correctly. On October 22, 2019, Tarver indicated he was not satisfied with the step one response and requested review at the second step level, seeking immediate administrative parole. Tarver questioned why and when his eligibility status changed from ineligible to eligible for parole.[3] His response included

---

[1]  Indecent behavior with juveniles in violation of La. R.S. 14:81 is included in the definition of "sex offense" as defined by La. R.S. 15:541(24)(a).

[2]  Louisiana Revised Statutes 15:574.2(C)(4), which enacted provisions for administrative parole, was subsequently repealed by 2019 La. Acts, No. 369, § 4.

[3]  Tarver originally filed a pleading in the district court entitled "Petitioner's Original Pro Se Brief" wherein he detailed being initially informed that he was not eligible for parole but was later given a parole eligibility date of August 28, 2020. We also note that the Master Prison Record reflects that the parole eligibility date was corrected prior to September 18, 2019.

2

reference to Acts 1209[4] and 670,[5] La. R.S. 15:574.2, and denials of due process and equal protection under the 14th Amendment of the United States Constitution (14th Amendment rights). He contended that he was not offered good time or programs to facilitate his new parole status and attached Exhibits E and J, documentation reflecting the denial of Certified Treatment & Rehabilitation Program (CTRP) credits. At the second step, DPSC denied the relief Tarver sought, noting that Tarver was serving a sentence for a sex offense committed on December 12, 2011, and that he was not entitled to parole pursuant to Act 280.[6]

Thereafter, Tarver filed a petition for judicial review in the Nineteenth Judicial District Court (19th JDC), seeking review of the adverse decision rendered in ARP No. ALC-2019-319 and further asserting that he was entitled to diminution of sentence because programs were not made available to him in accordance with a case plan based on his risks and needs and that he was entitled to be awarded CTRP credits, which are governed by La. R.S. 15:828.[7] DPSC answered the petition, denying that Tarver was eligible for parole under Act 280, since Tarver committed his crime on December 12, 2011.

---

[4] Act 1209 is 1999 La. Acts 1209, §1, which amended La. R.S. 15:536, La. R.S. 15:537, La. R.S. 15:538(C)(1), La. R.S. 15:574.4(B), and La. Code Crim. P. art. 895(E) to provide for mandatory minimum sentences for certain sex offenders, and to provide for conditions of parole, probation, and diminution or suspension of sentence for certain sex offenders would not afford good time eligibility to Tarver. *See Richard v. Louisiana Department of Public Safety & Corrections*, 2019-1501 (La. App. 1st Cir. 7/24/20), 309 So. 3d 392, 394 n.1.

[5] In response to the first step, Tarver attached a copy of House Bill 670. However, House Bill 670 became 2014 La. Acts 191, § 1, effective August 1, 2014, which enacted La. R.S. 15:529.2, pertaining to intensive parole supervision for habitual offenders. There is no indication in the record before us that Tarver is a habitual offender or that La. R.S. 15:529.2 applies to him.

In his originally filed petition, Tarver references Act 670, which is 2018 La. Acts 670, § 1, effective June 1, 2018, that amended La. R.S. 15:571.3 to enact Paragraph (F) and amended La. R.S. 574.4 to enact Subparagraph (I). Act 670 is inapplicable to Tarver as it requires the DPSC to "submit an annual report to the legislature relative to offenders released from custody during the preceding year pursuant to the provisions of this Section. ..." As Tarver has not been released on parole in the preceding year, DPSC is not required to follow Act 670 with regard to Tarver.

[6] Act 280 amended numerous statutes, and DPSC did not refer to any specific statute.

[7] Tarver's petition does not address asserted violations of his 14th Amendment rights, which he assigns as error in his brief to this court.

3

The Commissioner[8] issued a report recommending that Tarver's petition be dismissed with prejudice for failure to state a cause of action, finding that the record did not support that DPSC's decision was arbitrary, capricious, manifestly erroneous or in violation of Tarver's rights. The Commissioner confined her findings to that portion of Act 280 that amended La. R.S. 15:828, pertaining to CTRP credits. The Commissioner, however, did not address Tarver's initial grievance that he was eligible for administrative parole pursuant to La. R.S. 15:574.2(C)(4)(b)(i) and (ii). After receiving Tarver's traversal, the district court affirmed DPSC's decision and dismissed his petition with prejudice in a judgment signed September 15, 2020. It is from this judgment that Tarver appeals.

## LAW AND DISCUSSION

Tarver asserts on appeal that Act 280, which amended La. R.S. 15:574.2(C) to add Paragraph (4), effective November 1, 2017, entitles him to administrative parole. He further asserts that ALC does not offer the necessary programs pursuant to La. R.S. 15:827(A)(7) that would permit him to earn parole to meet his case plan. He also maintains that he was denied CTRP credits pursuant to La. R.S. 15:828 for a class he tutored. Tarver further argues that the denial of each of the above violated his 14th Amendment rights.

Louisiana Revised Statutes 15:1177(A)(9) sets forth the appropriate standard of review by the district court, which functions as an appellate court when reviewing the DPSC's administrative decisions. The district court's review shall be conducted by the trial court without a jury and shall be confined to the record. La. R.S. 15:1177(A)(5). Specifically, the court may reverse or modify the administrative

---

[8] The Office of Commissioner of the 19th JDC was created by La. R.S. 13:711 to hear and recommend disposition of criminal and civil proceedings arising out of the incarceration of state prisoners. La. R.S. 13:713(A). The Commissioner's written findings and recommendations are submitted to a district court judge, who may accept, reject, or modify them. La. R.S. 13:713(C)(5); *see Martinez v. Tanner*, 2011-0692 (La. App. 1st Cir. 11/0/11), 79 So. 3d 1082, 1084 n.3, *writ denied*, 2011-2732 (La. 7/27/12), 93 So. 3d 597.

4

decision only if substantial rights of the appellant have been prejudiced because the administrative findings are: (1) in violation of constitutional or statutory provisions, (2) in excess of the statutory authority of the agency, (3) made upon unlawful procedure, (4) affected by other error of law, (5) arbitrary, capricious or characterized by an abuse of discretion, or (6) manifestly erroneous in view of the reliable, probative and substantial evidence on the whole record. La. R.S. 15:1177(A)(9); *Lightfoot v. Stalder*, 2000-1120 (La. App. 1st Cir. 6/22/01), 808 So. 2d 710, 715-716, *writ denied*, 2001-2295 (La. 8/30/02), 823 So. 2d 957.

On review of the district court's judgment under La. R.S. 15:1177, an appellate court owes no deference to the district court's factual findings or legal conclusions, just as the Louisiana Supreme Court owes no deference to an appellate court's factual findings or legal conclusions. *McCoy v. Stalder*, 99-1747 (La. App. 1st Cir. 9/22/00), 770 So. 2d 447, 450-51.

Tarver asserts that he is entitled to relief under the provisions of La. R.S. 15:574.2(C)(4)(b)(i) and (ii) relating to administrative parole. The Master Prison Record reflects that on December 12, 2011, Tarver committed the crime of indecent behavior with juveniles in violation of La. R.S. 14:81 and was sentenced on November 20, 2013, to twenty-five years in prison. He was provided a parole eligibility date of August 28, 2020.

Tarver claims that his parole eligibility date is incorrect and relies on Act 280, which added Paragraph (4) to La. R.S. 15:574.2(C) as follows:

> (a) Notwithstanding any provision of law to the contrary, each offender who commits an offense **on or after November 1, 2017**, other than a crime of violence as defined in [La.] R.S. 14:2(B) or a sex offense as defined in [La.] R.S. 15:541, and eligible for parole pursuant to [La.] R.S. 15:574.4(A)(1), except those sentenced under [La.] R.S. 15:529.1 or [La.] R.S. 13:4501, shall be released on administrative parole on the offender's parole eligibility date without a hearing before the committee if all of the following conditions are met:

5

(i) The offender has completed a case plan pursuant to [La.] R.S. 15:827(A)(7), except as provided in Subparagraph (b) of this Paragraph.

(ii) For any offender whose charge or amended charge on the bill of information was a crime of violence as defined by [La.] R.S. 14:2(B) or a sex offense as defined in [La.] R.S. 15:541, the following conditions are met:

> (aa) A victim of the offender has been notified pursuant to Subsection D of this Section and has not requested that the committee conduct a hearing.

> (bb) The district attorney of the parish in which the conviction occurred has been notified pursuant to Subsection D of this Section and has not requested the committee conduct a hearing.

(iii) The offender has not committed any major disciplinary offenses. ...

(iv) The offender has agreed to the conditions of supervision.

(b)(i) Except as provided in Item (ii) of this Subsection, if the offender has met the conditions provided in Items (a)(ii), (iii), and (iv) of this Paragraph, he shall still be released on administrative parole if the case plan was not created for him or the incomplete case plan was not the fault of the offender.

(ii) The provisions of Item (i) of the Subparagraph shall not apply to person who commit the offense on or after January 1, 2021.

[Emphasis added].

Tarver asserts that he is entitled to the exception provided in Subparagraph (b)(i) without noting that Paragraph (4) initially establishes that it is only applicable to "each offender who commits an offense on or after November 1, 2017." As previously stated, Act 280 added Paragraph (4) to La. R.S. 15:574.2(C), which allowed an offender to be released on administrative parole on his parole eligibility date without a hearing before the parole committee if certain conditions were met.

As Act 280 became effective November 1, 2017, it is not applicable to Tarver. According to La. C.C. art. 6, "In the absence of contrary legislative expression, substantive laws apply prospectively only. Procedural and interpretative laws apply both prospectively and retroactively, unless there is a legislative expression to the

6

contrary." Additionally, La. R.S. 1:2 provides that "[n]o Section of the Revised Statutes is retroactive unless it is expressly so stated." To determine whether a law should be retroactively applied, courts must first ascertain whether the legislature expressed its intent regarding retrospective or prospective application. If the legislature did so, the inquiry is at an end. If the legislature did not, the court must classify the enactment as substantive, procedural, or interpretive. Notwithstanding this analysis, even where the legislature has expressed its intent to give a law retroactive effect, the law may not be applied retroactively if doing so would impair contractual obligations or disturb vested rights. *MACWCP II LLC v. Williams*, 2017-0004 (La. App. 1st Cir. 9/15/17), 231 So. 3d 665, 669, *writ denied*, 2017-1750 (La. 12/5/17), 231 So. 3d 624. Act 280 contains no expression that it is to be applied retroactively. Substantive laws either establish new rules, rights, and duties or change existing ones. Interpretive laws, on the other hand, do not create new rules, but merely establish the meaning that the interpretive statute had from the time of its enactment. It is the original statute, not the interpretive one, that establishes the rights and duties. *St. Paul Fire & Marine Ins. Co. v. Smith*, 609 So. 2d 809, 817 (La. 1992). The addition of La. R.S. 15:574.2(C)(4), setting forth conditions for administrative parole that did not exist before its addition is a substantive change in the law and there is no legislative expression to the contrary. Therefore, Act 280 can only be applied prospectively.[9] [10]

Furthermore, Tarver committed his offense on December 12, 2011 and was sentenced on November 20, 2013. Parole eligibility is generally governed by the date of commission of the offense. *See State v. Johnson*, 98-0427 (La. 7/2/98), 721

---

[9] We further note that in 2018, Paragraph (C)(4)(a) was amended to apply only to offenders who committed an offense on or after November 1, 2020. La. R.S. 15:574.2, as amended by 2018 La. Acts, No. 604, § 1. Paragraph (C)(4) was ultimately repealed in 2019, as noted above.

[10] Act 280, which enacted Subparagraph (C)(4), required as one of the conditions for an offender to be released on administrative parole that "[t]he offender has completed a case plan pursuant to [La.] R.S. 15:827(A)(7) ... ." La. R.S. 15:574.2(C)(4)(a)(i). Tarver's complaints concerning lack of programs to satisfy the case plan are moot by the fact that Act 280 is inapplicable to him.

7

So. 2d 901; *Billard v. Kling*, 2010-0352 (La. App. 1st Cir. 2/11/11), 2011 WL 497175, at *1 n.1, *writ denied*, 2011-0406 (La. 3/2/12), 83 So. 3d 1033. However, when Tarver was sentenced, La. R.S. 15:574.4(A), as amended by 2011 La. Acts, No. 285, § 1 (Act 285) provided, in pertinent part:

> (1)(a) Unless eligible at an earlier date and except as provided for in Subparagraph (b) of this Paragraph and Subsection B of this Section, a person otherwise eligible for parole, convicted of a first felony offense shall be eligible for parole consideration upon serving thirty-three and one-third percent of the sentence imposed. ...

Act 285 applied to any person sentenced on or after August 15, 2011. 2011 La. Acts, No. 285, § 2. Therefore, Tarver has not shown that the parole eligibility date of August 28, 2020 provided by DPSC is incorrect.

Before the enactment of Act 280, Tarver was not entitled to administrative parole pursuant to La. R.S. 15:574.2(C)(4), which did not exist until the effective date of Act 280, November 1, 2017. As Act 280 applies prospectively, it does not apply to Tarver who committed his offense on December 12, 2011. Tarver was entitled to parole eligibility pursuant to Act 285, and there is no showing that DPSC has calculated his parole eligibility incorrectly.

Tarver also complains that he was not given CTRP credit for a class he tutored while at ALC. We find no error in the district court's finding that no CTRP credits were available to Tarver. At the time of his offense, CTRP credits, which are commonly referred to as educational good time credits, were governed by La. R.S. 15:828(B), as amended by 2011 La. Acts, No. 186, § 3, and provided:

> The secretary shall adopt rules and regulations for local jail facilities and state correctional institutions to encourage voluntary participation by inmates in certified treatment and rehabilitation programs, including but not limited to basic education, job skills training, values development and faith-based initiatives, therapeutic programs, and treatment programs. When funds are provided, such educational programs shall be available at each penal or correctional institution under the jurisdiction of the department. The rules and regulations may include provisions for furloughs or the awarding of earned credits toward the reduction of the projected good time parole supervision date. Offenders may be awarded up to ninety days toward the reduction of

8

the projected good time parole supervision date for satisfactory participation in each approved program pursuant to the provisions of this Subsection, but no offender shall receive more than two hundred fifty days total earned credits toward the reduction of the projected good time parole supervision date for program participation.

At this same time, La. R.S. 15:828(C), enacted by 1994 La. Acts, 3rd Ex.Sess., No. 110, § 1, effective August 27, 1994, provided:

> A prisoner who has been denied eligibility for diminution of sentence for good behavior as provided in [La.] R.S. 15:537 shall not be eligible for additional good time as provided in Subsection B of this Section.[11]

Louisiana Revised Statutes 15:537(A), as amended by 2008 La. Acts, No. 646, § 2, in effect at the time Tarver committed his offense, provided:

> If a person is convicted of or pleads guilty to ... [La.] R.S. 14:81 (indecent behavior with juveniles) ... and is sentenced to imprisonment for a stated number of years or months, the person shall not be eligible for diminution of sentence for good behavior.

Therefore, Tarver was not entitled to good time credit pursuant to La. R.S. 15:537 or educational good time credits pursuant to La. R.S. 15:828 when he committed his offense. [12]

Act 280 amended La. R.S. 15:828(C) to allow all offenders, including habitual offenders, the ability to earn CTRP credits unless the offender's instant offense was a sex offense as defined in La. R.S. 15:541 or a crime of violence as defined in La. R.S. 14:2(B) and the offender has one or more prior convictions of a crime of

---

[11] When La. R.S. 15:828(C) was enacted, La. R.S. 15:828(B), as amended by 1992 La. Acts, No. 723, § 1, provided as follows:

> The secretary shall prescribe rules and regulations in the facilities and institutions under the jurisdiction of the department to encourage voluntary participation by inmates in vocational training, adult education, literacy, and reading programs. When funds are provided, such educational programs shall be available at each penal or correctional institution under the jurisdiction of the department. The rules and regulations may include provisions for furloughs or good time, in addition to the provisions of [La.] R.S. 15:571.3(B) and 571.14, for offenders who are otherwise eligible, but no offender shall receive more than ten additional days per month and one hundred eighty days total good time for program participation.

[12] The Master Prison Record reflects that Tarver's entitlement to good time is governed by Act 1209. 1999 La. Acts, No. 1209, § 1, amended La. R.S. 15:537. At the time Tarver committed his offense, La. R.S. 15:537 had been amended on several other occasions with the latest being 2008 La. Acts, No. 646, § 2. However, there is no difference in the substance of Act 646 or Act 1209 as they relate to Tarver. Neither act affords Tarver eligibility for good time.

violence or sex offense. As this is a substantive change, we find that that amendment can only be applied prospectively. *See St. Paul Fire & Marine Ins. Co.*, 609 So. 2d at 816. As noted by the Commissioner, Act 280 does not affect the outcome of Tarver's petition for judicial review. Both before and after Act 280's effective date of November 1, 2017, sex offenders were unable to earn CTRP credits. As Tarver committed his offense on December 12, 2011, he was not entitled to earn CTRP credits at that time, and Act 280 has no bearing on his ability to earn those credits.

Tarver also complains that his equal protection and due process rights of the 14th Amendment of the United States Constitution have been violated. The award of good time is not a federal constitutional right. Rather, it is a matter of state law, the purpose of which is to encourage discipline. *Whittington v. Wall*, 94-2226 (La. App. 1st Cir. 6/23/95), 657 So. 2d 1058, 1061, *writ denied*, 95-1722 (La. 6/7/96), 674 So. 2d 979. Regarding his equal protection claims, Tarver has not alleged nor is he a member of a suspect class. *See Whittington*, 657 So. 2d at 1061. Therefore, if a rational basis exists for the differentiation among persons, there is no equal protection violation under the federal constitution. Where no suspect class or fundamental right is involved, the standard of review under the Louisiana and United States Constitutions is essentially the same; *i.e.*, the legislative classification must be rationally related to a legitimate state purpose. *Whittington*, 657 So. 2d at 1062. Applying the rational relationship standard to this case, we find that a rational basis exists for good time under Act 280 to be applied prospectively to only crimes committed after the effective date of the act. Good time credits are determined by the law in effect at the time the offense is committed. *Wallace*, 255 So. 3d at 617.

Regarding Tarver's due process claim, we note that the due process clause is implicated when the government deprives an individual of life, property, or liberty. *See Kentucky Department of Corr. v. Thompson*, 490 U.S. 454, 459-60, 109 S.Ct. 1904, 1908, 104 L.Ed.2d 506 (1989). In identifying a liberty interest, courts may

10

look to the Constitution or statutory law. *Ellis v. Dist. of Columbia*, 84 F.3d 1413, 1415 (D.C. Cir. 1996). In a prison setting, however, liberty interests are "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, [*e.g.*, a transfer to a mental hospital or the involuntary administration of psychotropic drugs,] nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995) (citations omitted). Thus, prisoners do not have a due process right to participate in vocational and educational programs. *See Women Prisoners of Dist. of Columbia Department of Corr. v. Dist. of Columbia*, 93 F.3d 910, 927 (D.C. Cir. 1996) (citing *Inmates of Occoquan v. Barry*, 844 F.2d 828, 836 (D.C. Cir. 1988), *cert. denied*, 520 U.S. 1196, 117 S.Ct. 1552, 137 L.Ed.2d 701 (1997)) (inmates do not have a constitutional right to work and educational opportunities); *Burnette v. Phelps*, 621 F.Supp. 1157, 1159 (M.D. La. 1985). Therefore, we find no violation of the due process or equal protection clauses of the 14th Amendment of the United States Constitution.

As Act 280, relative to administrative parole, became effective November 1, 2017, is substantive, and applies prospectively, it does not apply to Tarver who committed his offense on December 12, 2011. Furthermore, Tarver is not entitled to CTRP credits or diminution of sentence for good behavior since he has been convicted of a sexual offense as defined in La. R.S. 15:541(24)(a). Lastly, Tarver's 14th Amendment rights have not been violated. Upon our *de novo* review, we do not find that DPSC was arbitrary, capricious, manifestly erroneous or otherwise in violation of Tarver's rights in denying his claim.

11

## CONCLUSION

For the foregoing reasons, we affirm September 15, 2020 judgment of the district court dismissing the petition of David Tarver with prejudice. We assess no costs in this pauper suit.

**AFFIRMED.**